353 P.2d 765

Kathryn DAWSON, Surviving Widow and Administratrix of the Estate of Royal Dawson, Deceased, Claimant-Appellant,

v.

POTLATCH FORESTS, INC., Employer, and Workmen's Compensation Exchange, Surety, Defendants-Respondents.

No. 8822.

Supreme Court of Idaho.

July 5, 1960.

Blake & Givens, Lewiston, for respondents.

Paul C. Keeton, Lewiston, for appellant.

McQUADE, Justice.

Claimant-appellant Kathryn Dawson seeks Workmen's Compensation death benefits and certain other benefits for the illness and death of her husband, Royal

Dawson. Defendants-respondents are his former employer, Potlatch Forests, Inc., and its surety, Workmen's Compensation Exchange.

Dawson, 57 years of age at the time of his death, had been employed in a clerical and supervisory capacity in the moulding department of the Potlatch Forests lumber mill at Lewiston, Idaho. He became ill at work May 13, 1957. His physician diagnosed the condition as coronary heart disease, specifically: left bundle branch block, occlusion, and septal, posterior myocardial infarct. Dawson was hospitalized from May 13 to June 6, 1957. He convalesced during the summer, returning to work in November, 1957.

At work on January 13, 1958, Dawson slipped on some grease and fell, striking his upper arm on a railroad track. The blow fractured his left humerus. At that time, he consulted his physician, who believed Dawson had suffered another heart attack. Dawson had also, during January, suffered a burning sensation in his stomach. Because of pain and deterioration in his condition, he was hospitalized January 21. His physician, Dr. J. E. Baldeck, gave a working diagnosis of "(1) Fracture left humerus, no displacement (2) possible esophagitis or gastritis."

Examinations disclosed no fresh heart damage. Dawson's esophagus was examined with the aid of an esophagoscope. The physician making the examination experienced difficulty passing the scope into the patient's stomach. Immediately Dawson developed a rupture which permitted air within the lung to enter the pleural cavity, collapsing his left lung. An emergency operation was performed to alleviate this condition. Dawson vomited blood on several occasions; he was given five transfusions.

The patient was unable to take nourishment, and finally reached a point where he was starving. A gastrostomy was performed, and a feeding tube was placed in his stomach. It was found Dawson was suffering also from carcinoma of the esophagus. His condition continued to deteriorate until he died March 26, 1958.

Mrs. Dawson filed a claim for compensation and a petition for hearing, alleging her husband suffered compensable injuries May 13, 1957 (the heart attack) and January 13, 1958 (the arm fracture), and that these injuries caused, precipitated, or contributed to his death.

After hearing the evidence, the Board found:

"Dawson's death was neither caused nor hastened by his accidental injury of January 13, 1958."

The Board approved payment of 10 weeks' total temporary disability, aggregating $330, which had been paid by the surety, for the period from January 13, 1958, to the date of Dawson's death. It ruled expenses for medical, hospital, and kindred services are subject to apportionment, defendants being liable for that portion necessitated by the fracture. The Board went on to say there is no evidence upon which it might make a division of these expenses:

" * * * The Board advises the parties to attempt to reach an accord thereon. If they are unable to agree, the Board will on appropriate application, hear further evidence directed to apportionment of the medical and hospital bills."

Claimant appeals from the findings of fact, the rulings of law and the order. She maintains the Board erred in finding the accident did not precipitate nor contribute to her husband's death; in not awarding the entire sum charged for hospital care, in the amount of $2,392.62; and in denying death benefits and burial expenses.

While claimant's petition for hearing mentions the May, 1957, heart attack, the hearing, and this appeal, are concerned solely with the arm fracture and its consequences.

This Court has repeatedly held a compensation claimant has the burden of proving his case by preponderance of the evidence. Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784; Miller v. State, 69 Idaho 122, 203 P.2d 1007.

The strongest testimony linking Dawson's death with the accident of January 13, 1958, is that of Dr. Burton R. Stein, a specialist in internal medicine and an expert witness for the claimant. He said:

" * * * I would say that it [the fracture] undoubtedly played a role or was a factor, but I could not apportion any value or amount of significance to that factor."

Dr. Bernard S. Heywood, a physician and surgeon appearing for the defendant, testified:

"Q. Doctor, in your opinion, was the injury this man suffered on January 13, 1958, did it contribute to, aggravate, hasten or accelerate this man's death on March 28, 1958? A. I don't believe so. If it did at all it would be an extremely minor factor.

"Q. Would it be remote? A. That is right."

Another physician, Dr. John W. Armstrong, testified:

"Q. Do you think the injury to the left arm had anything to do with his death? A. I don't think the injury to his arm caused his death."

**410**

Dr. Lester Crismon gave his opinion:

"Q. Did you, from your examination, Doctor, feel there was any relationship between the injury to his arm and the condition that he was suffering from the stomach upset and discomfort or his heart condition? A. It was my opinion that there was no relationship."

The credit and weight to be given this testimony is for the Industrial Accident Board, whose findings, if supported by competent evidence, are conclusive upon appeal. Benson v. Jarvis, supra; Miller v. State, supra. The Board correctly concluded the claimant did not sustain the burden of proving her case by a preponderance of the evidence.

The question of apportionment of expenses was left open, the Board finding there was insufficient evidence upon which to base such a division. The Board, in the light of this opinion, will make an apportionment upon application of the parties.

The order is affirmed.

Costs to respondents.

SMITH, KNUDSON and McFADDEN, JJ., concur.

TAYLOR, C. J., sat at the hearing, but did not participate in the decision.