372 P.2d 397

**O. D. HARRISON, Claimant-Appellant,**

v.

**LUSTRA CORPORATION OF AMERICA, Employer,**

and

**Lumbermen's Mutual Casualty Company, Surety, Defendants-Respondents.**

No. 9092.

Supreme Court of Idaho.

June 12, 1962.

Richards, Haga & Eberle, Dale O. Morgan, Boise, for respondents.

———◆———

Gus Carr Anderson, Vern E. Herzog, Jr., Pocatello, for appellant.

KNUDSON, Justice.

O. D. Harrison, appellant (claimant) was employed on a commission basis by respondent, Lustra Corporation of America, as its sales representative in selling light tubes and fixtures.

About April 6, 1960, in pursuance of his employment, appellant went to Rexburg, Idaho, where he rented a motel room at the Shannon Motel. Throughout the day he called on customers, ate his evening meal, and returned to his motel room at about 6:00 P.M. He then made out his required daily report and also his weekly report, following which he drove his car to the post office to mail the reports, returning to his room at approximately 9:00 P.M. Shortly thereafter he proceeded to take a shower bath following which he turned off the faucets and was in the act of drawing aside the curtains when something happened, the details of which he cannot recall. Appellant was afterwards told by the management of the motel that he opened the door of the motel office and as he was saying that he needed help, he immediately collapsed on the floor. At that time he was clad in his shoes, pants and robe.

The next morning he was taken to the local hospital—the record does not disclose what, if any, examination was there made. However he was, during that morning, returned to the motel and later taken by his wife to the hospital in Pocatello.

Appellant was denied compensation by the Industrial Accident Board from which order this appeal is taken.

The Board found that by reason of his accidental injury appellant was totally disabled for work from April 7 to September 6, 1960. However, error is assigned to the ultimate finding and ruling of the Board on the main issue which is:

"The Board finds and rules that claimant's taking of a bath on the evening of April 6, 1960, was a personal act in the course of normal living and that his accidental injury did not arise out of or in the course of his employment."

It is appellant's contention that the great weight of evidence is convincing that appellant intended to continue with his work after being refreshed by a shower bath. In this connection, appellant, in explanation of what he did after he had prepared and mailed his daily and weekly reports (hereinbefore mentioned) testified:

"Q. Then what did you do?

"A. I went back to my motel and started to write Mr. Vic Leach.

"Q. Who is he?

"A. Victor Leach is my immediate superior, directly under Frosty Killins.

"Q. What were you going to write Mr. Leach about?

"A. To try to see if I could get a little better price on fixtures for an account in Rexburg that I was trying to get a complete lighting job for.

"Q. Then what happened?

"A. It was kind of a hard day that day and when I started to sit down to the typewriter, when I started, I just couldn't get my wits about me—I was just tired, so I decided I would take a shower and freshen up and then get back to my work.

"Q. What time of the day was this?

"A. Around nine o'clock.

"Q. What time do you normally go to bed,—that is, go to bed to sleep?

"A. It would be around eleven or eleven-thirty.

"Q. Did you have any other work to do that evening other than write this letter?

"A. Well I was going to figure out two different types of lighting. In other words, I was going to figure out an open type light or an enclosed fixture, and get the price and everything figured out to show the people at Keith's Mens Store to see if I could sell them on the idea of putting one of the types of lighting in there.

"Q. You said you sat down at the typrewriter and started to write your letter?

"A. Yes, Sir.

"Q. To your supervisor?

"A. That is right

"Q. Then did you start the letter?

"A. I just did start it—I never did see the letter afterwards—I think I just said—it was very informal—Vic and I always kept it that way, and—

\*       \*       \*       \*       \*       \*

"Q. Did you start the letter?

"A. Yes, Sir.

"Q. Then what happened?

"A. I decided to take a shower.

"Q. And Why?

"A. I was just tired and thought that it would refresh me and I would do a better job of explaining to Vic why I wanted a discount—a higher discount.

"Q. And to perform your other work?

"A. Yes, Sir.

"Q. Did you take the shower?

"A. Yes.

"Q. What happened?

"A. Well I, just the same as usual took a shower, and the last I remember —it was a shower with two valves in it instead of just one, and I took ahold of the valve and the faucets and turned

them right off, and I reached like this (illustrating) to push the curtain back, and that's all—that's all I remember.

"Q. This was about what time?

"A. I think about nine-fifteen or nine-ten when I went to the shower."

The Board pointed out that the foregoing testimony is somewhat at variance with the allegations of appellant's claim dated December 9, 1960 (which was admitted as an exhibit) the pertinent portion of which is:

"Part (W)

"Employee was a guest of Shannon Motel, Rexburg, Idaho, preparing to retire, while traveling in the course of employment as a traveling salesman.

"Preparing to take a bath, I turned on the shower in the shower room adjacent to and part of the area rented by me and stepped into said shower room and proceeded to bathe; as the bath was ended, I turned to turn off the water, slipped and fell to the floor of the bath because of excessive slipperiness of the tile on the floor of the shower room and by reason of there being no floor mats upon the shower room floor. I struck my head on the ledge of the shower room with great force, thereby sustaining serious injury."

The Board did not arrive at a determination as to whether appellant intended to retire or write a letter to his superior after taking his bath. In this connection the Board found:

"While it is probable that Harrison did have in mind that he had another letter to write, the necessity for so doing was not so pressing as was the making of his reports. He was mentally worn out after a hard day's work. He had already gone to the post office. On this record the Board is unable to make a finding on claimant's intent. It is just as likely that he was preparing to retire as it was to freshen up for further office work."

Appellant contends that since the Board could not make a finding as to appellant's intent at the time he was injured the case should be resolved in favor of appellant and allow compensation. Appellant cites the New York case of Miller v. F. A. Bartlett Tree Expert Co., 3 N.Y.2d 654, 171 N.Y.S.2d 77, 148 N.E.2d 296 as involving similar facts and being very much in point. In that case the claimant, a sales representative and general manager, was directed to attend a 3-day convention which was being held for the purpose of instructing members of the trade on new methods and experimental work. The employer reimbursed claimant for all his expenses; his schedule called for sessions in the field during the day and indoor sessions in the evenings. Following an outdoor session during which he had occasion to dig in the soil

and freely perspire, and in preparation for the evening session, he stepped into the bathtub to take a shower and as he did so he slipped and fell. In remitting the matter to the Board for further consideration, the Court said:

"As we read this record, the taking of a bath was, under the circumstances here involved, related to Miller's employment * * * and his participation in both afternoon and evening sessions were demanded and ordered by his employer. That being the case, the injury suffered when he was taking a bath between those two sessions necessarily arose out of and in the course of his employment."

The instant case is distinguishable from the Miller case in the following factual respects. Appellant was employed as a sales representative on a commission basis to operate within a designated area; he was neither requested nor directed to go to Rexburg; he was at liberty to choose his hotel or motel accommodations and paid his own expenses; he was not required, under his contract of employment, to work any specified hours, although it provided that he "shall devote his full time and efforts to the sale of the products of the company". Such provision is in its nature somewhat ambiguous, however it does not require the employee to devote 24 hours a day nor every minute of his waking hours to his employment. On the other hand, it undoubtedly does require that the employee shall make that employment his business to the exclusion of the conduct of other business such as usually calls for the substantial part of one's time or attention. (See Johnson v. Stoughton Wagon Co., 118 Wis. 438, 95 N.W. 394).

In support of appellant's contention that even though the taking of a shower bath may be considered a deviation from his employment it would not deprive him of benefits under the compensation Act, he cites Smith v. University of Idaho, 67 Idaho 22, 170 P.2d 404. The rule as stated therein has been well established. However, in the instant case, the Board having specifically found that the accidental injury did not arise out of and in the course of appellant's employment, we do not consider a rule relating to deviation from employment to be controlling.

■ In compensation cases, claimant has the burden of proving his case by a preponderance of the evidence. Dawson v. Potlatch Forests, Inc., 82 Idaho 406, 353 P.2d 765; Miller v. State, 69 Idaho 122, 203 P.2d 1007; Cameron v. Bradley Mining Co., 66 Idaho 409, 160 P.2d 461.

■ The constitution of the State (Art. 5, § 9) admonishes us that our review is limited to questions of law and this Court can neither weigh the evidence nor make

findings of fact. (Dyre v. Kloepfer and Cahoon, 64 Idaho 612, 134 P.2d 610). Consequently, the sole question before this Court is whether the Board erred, as a matter of law, in its order denying compensation.

No exact formula can be laid down which will automatically solve every case. Each case involving a question of whether a traveling man should receive compensation for injuries resulting from an accident occurring at a time when he is not strictly attending to his employer's business must be decided in the light of the facts and circumstances involved. In Smith v. University of Idaho, supra, this Court quoted with approval that "if the act is one for the benefit of the employer or for the mutual benefit of both, an injury arising out of it will usually be compensable". The Court also held that compensation is allowable when the injury arises out of the nature of the employment, conditions, obligations or incidents of the employment. It is clear that the accident and resulting injury must relate to the employment.

Ordinarily sleeping and making a toilet are off hours activities, in which an employer has no interest or concern. If for some reason the employer desires or intends to include them within the employment it becomes the burden of the claimant to establish such fact. In the instant case the employer did not furnish or select the motel accommodations, nor was he in any respect concerned with the cost thereof. Appellant had complete discretion to select such facilities as suited his taste.

The Board recognized the borderline character of the basic issue here involved as being whether the accident is to be regarded as arising out of an "act of living" or out of and in the course of his employment. The testimony of appellant and the facts alleged in his "Notice of Injury and Claim for Compensation" are in conflict. Although the facts and circumstances mentioned and referred to in paragraph 8 of the Board's Order Denying Compensation may not have been regarded as controlling the Board was entitled to consider them.

Clearly it is the province of the Board to give such weight and credibility to the evidence as in its judgment the evidence deserves and where the facts and circumstances shown by the record are such as very well might lead different minds to reach different conclusions from the issues presented, the findings of the trier of fact should prevail. Johansen v. Ferry-Morse Seed Co., 69 Idaho 275, 206 P.2d 545; Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Skeen v. Sunshine Mining Co., 60 Idaho 741, 96 P.2d 497.

We conclude that the Board was justified in refusing an award. Order affirmed. No cost allowed.

SMITH, C. J., TAYLOR and McQUADE, JJ., and OLIVER, D. J., concur.